Good morning, your honors. Vince Bronco, Federal Defenders, on behalf of Mr. Marguet. Mr. Marguet's conviction must be reversed because there was some foundation in evidence that he was a derivative citizen, but the district court failed to give an instruction on this theory of defense. The evidence that was in the record that provides the foundation for the instruction is on Excerpt Record 48, and that is the birth certificate of Mr. Marguet. On that birth certificate, it lists that, yes, he was born in Mexico, but it lists the parent as a United States citizen. It shows the place of origin of that U.S. citizen father as Los Angeles, California. It also shows that Mr. Marguet's grandmother currently resides in Los Angeles, California. What's my standard of review for whether I suggest that a district court should give an instruction? Well, I mean, it's... I mean, isn't it, in order for a district court to give an instruction for any party, doesn't there have to be a foundation for the instruction? Yes. And then after that, isn't an abuse of discretion standard for the district court, whether they give the instruction? I believe it's whether there's some foundation is the abuse of discretion standard. Right. Whether there is any foundation is abuse of discretion. But if the court made a legal error in reaching that decision, it becomes de novo. Well, I understand that, but what does that mean? Well, that means... That's the application of the law, isn't it? It has nothing to do with whether there's foundation in the record. Correct. But in this case... And in this case, aren't we really weighing whether there was foundation in this record? Well, yes. Isn't that what we're really talking about, is whether there's foundation in this record to give this instruction? Correct. The problem is that the district court did not quite see it that way. She recognized the... I guess I didn't want to interrupt your argument, but I guess my worry is this. It seemed to me that the defendant said prior to trial, I agree, I would not be entitled to a jury instruction on my theory. It's been foreclosed by the Ninth Circuit. Then it's stipulated that Michael was not the biological father. That's... In an immigration interview, Michael said he wanted to marry the defendant's mother, registered him as his own so that both could immigrate. However, the defendant was not my kid. Isn't that true? That evidence was never put before the jury. But it's for the judge. He's got to make a determination on whether he's going to allow this instruction in on an abuse of discretion. Well, not the contradictory evidence. Well, let me back up to the first question. Your Honor seemed concerned about the statement about we agree that my theory has been precluded. Now, let me back you up. I think it's the prior page where it's Mr. Miller that brought up this discussion, and the discussion was the defendant's claim that he was a derivative citizen by legitimation. And that is the context which defense counsel say, I agree, I cannot have my theory that has been foreclosed by the Ninth Circuit. And that theory was that you could derive citizenship by a non-biological parent. But he also repeatedly says, but we're still holding the government to its burden of proof about alienage. Well, and as long as the government has a burden of proof on alienage, that's good. And there is evidence in the record about alienage. What we're really arguing about here is whether the government also has to disprove derivative citizenship. And Sandoval-Gonzalez answers that question. That's where I'm really going. I'm not sure that Sandoval does answer that question, because it seemed to me that on an abuse of discretion standard, when you've got all these facts, plus you have the fact the Ninth Circuit has said in no undefinite terms, defendant is not entitled to derivative citizenship. He doesn't have a blood citizenship relationship with Michael. And so then the court, with all that in front of him, says, well, this instruction could only lead to a judicially precluded finding. So I'm not giving the instruction. And now me, on an abuse of discretion standard, I'm supposed to say you're wrong. Well, first of all, let's back up to Margay 1. In Margay 1, at page 1087, in the conclusion section, after they said, no, you can't show that you're a U.S. citizen by a non-biological father, it specifically states, however, in order to convict him, the government did not prove that Carlos Margay was a United States citizen. And Margay 1 was essentially saying, yes, or we deny your motion, which was an attack on the deportation, but because the government never introduced any of this evidence at trial, and there was an erroneous admission of evidence, that we still have to reverse, meaning you have to go back and actually prove this in the district court, and the government never produced any of this evidence. There's no evidence in this record of alienage? I'm saying that if there's some foundation, meaning the only evidence at trial was Mr. Margay's father was a United States citizen, and then you go to Gonzalo Sandoval, and in that case, it's the same situation. Only a birth certificate was introduced into evidence, and that birth certificate said U.S. citizen's father. And the conclusion on that, of that opinion, and this is at star 8, is a rational juror might well have developed a reasonable doubt about Sandoval's alienage based on his father's citizenship, notwithstanding any other evidence of alienage. Let me ask, let me ask, no, it stops again. I didn't mean to. You got more to say about that? Go ahead, Your Honor. Less supposing that this citizenship statute said, derivative citizenship does not apply to anyone born in Mexico. Okay. Then, could the court refuse the instruction because it was irrelevant? It would not have any foundation in law. Correct. So why is this not the same case? The government has already, the Ninth Circuit has already said, derivative citizenship does not apply to this immigrant. Then the court refused the instruction, and all the government had to prove was alienage. And there is sufficient facts that he doesn't have alienage in the record. So why is there then a mistake in not giving the instruction? Because Sandoval Gonzalez makes clear, which was suggested much before, is that derivative citizenship negates alienage. And that means if you have some foundation in evidence of derivative citizenship, and that in this case is a U.S. citizen father, you can't go then and look at facts that aren't even in the trial record to determine whether or not there was some evidence. I think one case is Bayo Bahena can guide some instruction. And that is, Your Honor, was concerned about the abuse of discretion standard. In Bayo Bahena, it was the same abuse of discretion. And Mr. Bahena was arguing that he should get an instruction on official restraint, meaning if you have constant surveillance from the point you enter the United States, you haven't entered the United States. The evidence of trial was just that there was surveillance, but it did not know when that surveillance began. This was some evidence under abuse of discretion, some foundation that required the jury instruction be given. And the same applies here because all we know from trial is that there is a U.S. citizen father. There was no stipulations ever in the record that Mr. Margay's father was not his biological father. With that, I'd like to save some time for a vote. Thank you. Good morning. May it please the Court. Steve Miller for the United States. I can best characterize the defense approach in this as the honeymooner's approach. Remember those Jackie Gleason scenes where he would say, hey, Norton. In this case, it's, hey, Court, you know I'm not a derivative citizen, and I know I'm not a derivative citizen, but the jury doesn't know that you know that I'm not a derivative citizen. So let's say we try to deceive the jury into finding something that is not true. I mean, but in terms of this, he's still got a right to a jury trial. Oh. Got a right to, for whatever reason, say government put on your case. Absolutely, and that is what happened. Well, the government never put on any evidence that this was not a citizen. That's not. And it has to prove that he's a citizen. Oh. The government put in evidence that he was a citizen of Mexico, which was sufficient evidence that he was an alien. The evidence was that he came in under a K-2 visa, and that's when he presented the birth certificate saying I was born in Mexico. So he was granted an entry under K-2 as an alien. He then applied for permanent residency as an alien. Then he was deported as an alien. And that is the evidence. Oh, and additionally, he also filed an N-600 where he said I was born in Mexico. I was granted permanent residency. I came in on this day on a K-2 visa, and by rational inference, aliens are the people who ask for permission to enter under these residency inhibitions. But didn't he also have the birth certificate showing he had a father who was an American citizen? Yes and no. It was not a birth certificate. It was a certification of birth registry. Nonetheless, it shows an American citizen that is his father. And which goes to the flip side of in limine motions. We went in limine to limit what can and cannot come in. But also it shows what can and cannot be argued so that the parties know ahead of time what they need to argue and what they need to present. And in this case, since the defendant was not a derivative citizen, and that was a factual matter, then the parties, the United States and the defense, knew what evidence they needed to present. And the other consequence would be to divest the district court of its discretion. With the August 19th hearing, didn't the defendant pretty clearly say he was going to put you to the test of showing that he was not a citizen? Absolutely, which is the same as him putting me to the test in the first trial, where we then presented the fact that he came in under a K-2 visa and that those who enter under visas are aliens. Do you contend that there's some law of the case that because this was decided earlier, largely based upon his stipulation, that he doesn't have a right to change his argument in the second trial? To some point, yes. But the main point that I want to make is that the district court properly ruled in limine what should be limited. And that was best summarized on page 149 to 150, where the court said at some point, the court has to, you know, limit the argument and what the jury can take into consideration, because some of this could lead to definite confusion of the issues. They could be legally irrelevant, either right to exclude or limit or prevent excessive consumption. And it's not the time. It's the undue prejudice and confusion of the issues and misleading the jury, which I believe would happen if we get into the citizenship issue. So the flip side of the limiting was so that the parties would know that it is not necessary to bring in the collateral evidence. And we think – and if you extrapolate, if you divest the district court of its discretion to control its evidence. When did they submit their proposed instruction? How much ahead of the trial? You know, I don't know how many days, but we had already gone through in limine. It was some days before the trial. Oh, yes. Did you know when they submitted that proposed instruction that they were going to put you to the test on establishing to a jury that he was not a citizen? Yes. I knew that they were going to put me to my burden. I also knew that as a matter of factual conclusion that he was not a derivative citizen and that we wanted to – You're not the one that makes the decision, though. No, no, I'm not. The district court is. No, I mean, in terms of whether he's a citizen, that's for the jury to find, isn't it? It's for the – no, no, it's not – Whether you believe it or even the district judge believes it, didn't he have a right to have the jury decide it? No, it is not the jury's obligation to decide whether or not he is a U.S. citizen. It's the jury's obligation to decide whether or not my proof, as limited by the district court, was sufficient to show that he was a Mexican citizen or a foreign national. Now, yes, I knew what his jury instruction was, but there really is no functional difference for the defendant to say, I am not going to argue that he's a derivative citizen and then to say, well, but I'm going to argue that he might be a naturalized citizen and then say, but the definition of a naturalized citizen includes the criteria of derivative citizenship. And to extrapolate all that, we would then turn a simple case into something that would require other evidence, which might be prejudicial to the defendant. Four different times in my pleadings and directly to in court, I said, if they do argue derivative citizenship, then I'm going to ask this court to take judicial notice of its prior decision, both the district court's decision showing that there was a legal determination that he was not a derivative citizen and the Ninth Circuit. Also, keep in mind, what would have also happened when, in spite of having a conclusive decision that he's not a derivative citizen, that we would bring in evidence that it was not a birth certificate. You said conclusive decision. Yes. I mean, can you have such a beast? Can you have a beast that's one that becomes a law of the case that controls all other proceedings in a case? Well, I have to say that if the Ninth Circuit makes a decision, I take that as conclusive. If I go with what the Ninth Circuit tells me is the conclusion. Okay. I mean, criminal defendant, he obviously thought that his best argument in the first trial was some other legal argument, and so he stipulates, but. . . Actually, no. In the first trial, he wanted to, again, put the government to its burden to prove citizenship, but it was a substantially stipulated bench trial, and then the only evidence that we presented had to do with proof of his alienage, which was evidence of the K-2 visa showing that since someone came in as an alien, that shows his alienage. But the main purpose was. . . Put the 600 stuff in in the first trial. No. Oh, that had not been filed until after the first trial. I didn't. . . And then after. . . I don't remember if it was filed before the Ninth Circuit. I suspect it was filed before the Ninth Circuit had reached its decision. But we. . . So the main purpose of the first trial was to preserve the issue as to whether or not the Ninth Circuit would decide whether the old derivative citizen statute would allow non-blood related people, because they had that switch in the language, and they ruled against it. So the main purpose, and we were still put to the burden of proof in the first trial. But if you were to extrapolate the evidence that would have had to have, that would have come out, and then sown confusion and prejudice, is that if I took judicial notice of the other holdings, then the jury would realize, oh, or speculate, oh, maybe there was something early before. If I were to bring in, well, this birth certificate really is a certification of birth registry. He was born this year, but this document was not obtained until about 12 years, 10 or 12 years afterwards, and the father put his name on that. That would prejudice the defendant. If with the defendant's or the appellant's demand that I should bring in evidence of what happened at the immigration hearing, then the jury would hear that the defendant falsely said, my father is a U.S. citizen, and then the father coming in and saying, well, he's my stepson, I don't have a biological relationship. So the court did not abuse its discretion, and it needs to retain the ability to control the evidence in its case. Thank you. You have a few more seconds. I just want to clear a couple things up. Mr. Miller spoke about how this was subject to an in limine motion. It was not. He cited excerpt of record 149 and 50. That's after all the evidence had been submitted. The actual in limine hearing is on excerpt of record 58 through 60, and there Mr. Defense Counsel specifically said, so the government, all this talk about non sequiturs and about conclusive proof, there is no, there is, there has been no adjudication of Mr. Marguez's alienage. The district court then agrees. They have to prove alienage. The jury instruction was submitted a day before trial. The government was clearly on notice that we were contesting whether or not they could prove or disprove derivative citizenship. And a judicial notice wouldn't have helped the government in this case, because even with judicial notice in a criminal trial, a jury is free to disregard a judicially noticeable fact, and that's Rule 201G. Thank you very much for your argument, both of you. Case? 10-5041, United States of America v. Marguez-Paleto is submitted.
judges: Gwin, Fletcher B. , Smith N. R.